UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE CO.,<br><br>Plaintiff,<br><br>v.<br><br>JANET TEIXEIRA, through her legal guardian KAREN SARTO and GABRIELA RAMIREZ<br><br>Defendants. | Civ. No. 16-07486 (KM) (JBC)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Metropolitan Life Insurance Co ("MetLife"), owes either Karen Sarto or Gabriela Ramirez life insurance benefits payable as a result of the death of John J. Teixeira. Sarto is Teixeira's daughter and co-guardian of Teixeira's spouse, Janet Teixeira.[1] Ramirez was Teixeira's girlfriend. Each has submitted a claim for the benefits—Sarto on behalf of Janet, and Ramirez on her own behalf. MetLife says it can't determine which should receive them; stuck in the middle, MetLife has sought interpleader relief.[2]

---

[1] References herein to "Teixera" mean John J. Teixera. To avoid confusion, I refer to Janet Teixera as "Janet."

[2] Before proceeding any further, the Court is obligated to establish its subject matter jurisdiction. This is an interpleader case under Fed. R. Civ. P. 22, not the interpleader statute, 28 U.S.C. § 1335. The difference between statutory interpleader and rule interpleader is this: Section 1335 confers jurisdiction based on only "minimal diversity" between two or more adverse claimants and an amount in controversy of $500 or more. Rule 22 is merely a procedural device which assumes that the court has subject matter jurisdiction over the case; that is in keeping with the bedrock principle that only Congress can confer jurisdiction on the lower federal courts.

To proceed under Rule 22, then, an interpleader plaintiff must establish one of the usual bases for federal jurisdiction—generally, federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. (To this extent, Rule

1

MetLife requests an order (1) restraining Sarto and Ramirez from suing MetLife in any other action for recovery of the Plan benefits plus interest; (2) permitting MetLife to deposit $39,250 less $4,572.40 in attorneys' fees and costs with the court with the Clerk of Court; (3) forcing Sarto and Ramirez to litigate or settle their claims to the benefits; and (4) dismissing MetLife from this action "with prejudice and without further liability in connection with the Plan." I will grant (1), (2), and (3), but not (4). Because Sarto or Teixeira may have counterclaims against MetLife, I will not dismiss MetLife from this case. The motion will be granted in all other respects.

## I. BACKGROUND

Teixeira had an ERISA-regulated life insurance coverage policy (the "Plan"), which was sponsored by his former employer, Public Service Enterprise Group ("PSEG") and issued by MetLife. The Plan provided that, upon Teixera's death, his beneficiaries would be entitled to $39,250.00 (the "Benefits"). (Knepper Cert. ¶¶ 2, 6-7)

The Plan provided that Teixeira could choose anyone he wanted as his beneficiary—so long as the decision was in writing:

> The "Beneficiary" is the person or persons you choose to receive any benefits payable because of your death.
>
> You must make your choice in writing on a form approved by us. This form must be filed with the records for This Plan.
>
> You may change the Beneficiary at any time by filing a new form with the Employer. You do not need the consent of the

---

22 interpleader operates in much the same procedural manner as the declaratory judgment statute.)

Both claimants here seem to be citizens of New Jersey; as between them, even minimal diversity is absent. Subject matter jurisdiction, then, must be found elsewhere. While "federal question interpleader [is] a rarity," *Metropolitan Life Ins.*, 501 F.3d at 275, many courts, including the Third Circuit, "have recognized that an interpleader 'arises under' federal law when brought by an ERISA fiduciary against competing claimants to plan benefits." *Id.* at 276. This is such a case. The Court therefore possesses federal-question subject matter jurisdiction over this ERISA-based action.

2

> Beneficiary to make a change. When the Employer receives a form changing the Beneficiary, the change will take effect as of the date you signed it. The change of Beneficiary will take effect even if you are not alive when it is received.
>
> A change of Beneficiary will not apply to any payment made by us prior to the date the form was received by the Employer.
>
> Your choice of a Beneficiary for a personal policy issued under Right to Obtain a Personal Policy of Life Insurance on Your Life will be effective for This Plan.

(*Id.* ¶¶ 15, Ex. A pp. 33-34)

Initially, Teixeira designated Janet Teixeira, his spouse, as the sole beneficiary of the Plan. MetLife's records state that he did this, not in writing, but by telephone on March 21, 2003. (Knepper Cert. ¶ 9 & Ex. D)

Years later, on July 22, 2015, Teixeira named Ramirez as the sole beneficiary. Again, MetLife's records state that he did this by telephone. (Knepper Cert. ¶ 8 & Ex. C)

About nine months later, on April 1, 2016, Teixeira died. (*Id.* ¶ 8, Ex. C) Sarto as guardian claimed the Benefits on Janet's behalf. On May 13, 2016, Sarto submitted to MetLife a copy of a Certificate of Death for Teixera, as well as a copy of a Judgment of Legal Incapacity, dated January 26, 2016, appointing Sarto as co-guardian of Janet. (Knepper Cert. ¶ 10 & Ex. E)

At some point, Sarto, acting as Janet Teixeira's co-guardian, learned of the July 2015 designation change, naming Ramirez, and not Janet, as the beneficiary of Teixera's policy. On June 18, 2016, Sarto sent MetLife a letter stating that Teixeira was incompetent at the time he made the July 2015 designation of Ramirez as beneficiary. As support, Sarto enclosed a copy of Teixeira's Last Will and Testament, dated August 25, 2003; a Testamentary Certificate, dated May 4, 2016; a General Durable Power of Attorney, dated June 14, 2012; and a Department of Veteran Affairs Examination for Housebound Status or Permanent Need for Regular Aid and Attendance report, dated October 25, 2014. These documents tend to establish that (1) Teixeira, as

3

of August 25, 2003, appointed Sarto as the Executrix of his estate and intended to give Janet the "rest, residue, and remainder" of the estate upon his death; (2) Teixeira, in June 2012, designated Sarto as his attorney-in-fact and agent; (3) Teixeira, as of October 2014, was mildly cognitively impaired as the result of a stroke; and (4) on May 4, 2016, Sarto submitted Teixeira's Last Will and Testament to probate. (Knepper Cert. ¶11 & Ex. F)

Shortly thereafter, on June 27, 2016, Ramirez sent MetLife a competing claim for the Benefits. Ramirez's statement identified her as Teixeira's "girlfriend." (Knepper Cert. ¶12 & Ex. G)

Faced with competing claims, MetLife attempted to spur Sarto and Ramirez into settling the dispute. On July 15, 2017, it notified each by letter that their claims were adverse and that it was "required by law to initiate what is called an interpleader action to permit a court to decide between the claims." "Before doing so," MetLife advised, it would give Sarto and Ramirez "the opportunity to try and resolve the matter amicably in order to preserve the benefits from litigation costs and fees." (*Id.* ¶ 13, Ex. H.)

Five days later, on July 20, 2016, MetLife received a copy of a Revocation of Power of Attorney signed and certified by Teixeira. It purports to revoke Sarto's status as attorney-in-fact and agent as of March 9, 2015. That date falls *after* the October 2014 Veteran Affairs examination indicating that Teixera was cognitively impaired, but *before* the July 2015 designation change.[3] (Knepper Cert. ¶ 14, Ex. I)

As of October 18, 2016, Ramirez and Sarto had not settled or adjusted their claims, so MetLife filed this action for interpleader. (Compl., ECF No. 1) MetLife alleges that it cannot determine on its own whether Teixeira was competent at the time he named Ramirez the beneficiary of the Plan; to do so would risk exposure of itself, the Plan, and PSEG to multiple liabilities. MetLife

---

3   It isn't clear from the papers who sent this document to MetLife.

is, however, willing and able to pay the benefits to whichever claimant, Sarto or Ramirez, is entitled to them.

As relief, MetLife's Complaint requests an order (1) restraining Sarto and Ramirez from suing MetLife, the Plan, or PSEG for recovery of the Plan benefits plus interest; (2) permitting MetLife to deposit $39,250 less $4,572.40 in attorneys' fees and costs with the Clerk of Court; (3) compelling Sarto and Ramirez to litigate or settle their claims to as the deposited Benefits; and (4) dismissing MetLife, the Plan, and PSEG, from this case. (Compl. ¶¶ 18-26) Neither Sarto nor Ramirez has answered MetLife's complaint.

On February 23, 2017, MetLife filed a motion for interpleader and other relief, seeking an order granting the four forms of relief demanded in the Complaint. (ECF No. 5) Neither defendant has answered or otherwise opposed the motion.[4]

## II. DISCUSSION

Interpleader relief is equitable but also procedural. As the Third Circuit has put it:

> The equitable remedy of interpleader allows "a person holding property to join in a single suit two or more persons asserting claims to that property." *NYLife Distrib., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 372 n. 1 (3d Cir.1995). The plaintiff in an interpleader action is a stakeholder that admits it is liable to one of the claimants, but fears the prospect of multiple liability. Interpleader allows the stakeholder to file suit, deposit the property with the court, and withdraw from the proceedings. The competing claimants are left to litigate between themselves. *See* Zechariah Chaffee, Jr., *The Federal Interpleader Act of 1936: I*, 45 Yale L.J. 963, 963 (1936). The result is a win-win situation. The stakeholder avoids multiple liability. The claimants settle their dispute in a single proceeding, without having to sue the stakeholder first and then face "the

---

[4] Both waived formal service of the complaint. Sarto and Ramirez were served with MetLife's motion for interpleader and other relief by regular mail.

> difficulties of finding assets and levying execution." *Id.* at 964

*Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 1995).

There are no codified procedures or rules governing interpleader actions, but the case law has coalesced around a few principles. "[T]ypically," an interpleader action "involves two steps: during the first, the district court determines whether the requirements of the statute have been met and whether the stakeholder may be relieved from liability; during the second, it actually adjudicates the defendants' adverse claims to the interpleaded fund." *NY Life*, 72 F.3d at 374. The key inquiry in the first step—the step we are at now—is "whether the stakeholder legitimately fears multiple vexation directed against a single fund." 7 Charles A. Wright & Arthur R. Miller & Mary Kane Kay, Fed. Prac. & Proc. Civ. § 1704 (3d ed. April 2017 update); *accord Lexington Ins. Co. v. Jacobs Indus. Maintenance Co.*, 435 Fed. Appx. 144, 146 (3d Cir. 2011) ("[I]nterpleader allows a stakeholder who 'admits it is liable to one of the claimants, but fears prospect of multiple liability . . . to file suit, deposit the property with the court, and withdraw from the proceedings.") (quoting *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009)). "[T]he classic interpleader scenario involves a neutral stakeholder, such as an insurance company, faced with competing claims over the rights of the res— *e.g.*, the proceeds of a life insurance policy where the beneficiaries dispute their relative distributions." *New Jersey Sports Prods., Inc., v. Don King Prods. Inc.*, 15 F. Supp. 2d 534, 539 (D.N.J. 1988).

For the most part, this case presents the "classic" scenario. MetLife, an insurance company, concedes that *somebody* is entitled to the Teixeira's life insurance benefits. As a neutral stakeholder, it is ready and willing to pay out those benefits to the rightful beneficiary. Sarto, acting on behalf of Janet, and Ramirez have claimed the Benefits. If the 2015 beneficiary change was valid, then Ramirez may be entitled to the Benefits; if not, then Sarto (for Janet) may

6

be entitled. MetLife states that it cannot designate either claim as superior without opening itself to double liability.

MetLife's concern is legitimate. MetLife "[should] not [be] obliged at [its] peril to determine which claimant has the better claim." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 265 (3d Cir. 2009). MetLife is thus entitled to some equitable interpleader protection, including an order (1) permitting it to deposit the Benefits with the Court; (2) compelling Sarto and Ramirez to make claims to those deposited Benefits; and (3) restraining Sarto and Ramirez from initiating any other action to recover the Benefits from MetLife.

In the "classic" scenario, MetLife might also be entitled to (4) dismissal from this case. This case has an atypical feature, however, which weighs against granting dismissal, at least at present.

That atypical feature is the possibility that the claimants, once in court, will assert independent counterclaims—*i.e.*, not counterclaims against the fund, but against MetLife itself. A claimant might assert, for example, that some sort of negligence by MetLife "created the circumstances in which there were competing claims to the proceeds." *Hovis*, 553 F.3d at 263; *see also Lee v. West Coast Life Ins. Co.*, 668 F.3d 1004, 1012 (9th Cir. 2021). I do not say that such a counterclaim would succeed, but it is simply too early to say that it could not.[5]

---

[5] If Sarto and Ramirez choose to assert counterclaims against MetLife, for example, they must explain why those counterclaims should be regarded as timely. *See, e.g.*, Fed. R. Civ. P. 6(b)(1)(B), *Drippe v. Tobelinski*, 604 F.3d 778, 784 (3d Cir. 2010) ("[T]here is no discretion to grant a post-deadline extension absent a motion and showing of excusable neglect."). And any counterclaim against MetLife cannot be just an alternative version of the claim for benefits; rather, it must be "truly independent of who was entitled to the life insurance proceeds." *Hovis*, 553 F.3d. at 264-66 (upholding district court's dismissal of counterclaimant's allegation that insurer negligently "failed to resolve its investigation in his favor and pay our the life insurance proceeds to him" because an insurer's "failure to choose between adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty"); *but see Lee v. West Coast Life Ins. Co.*, 668 F.3d 1004, 112 (9th Cir. 2012) (holding that counterclaimant's allegation that insurer "negligent[ly] fail[ed] to correctly execute" beneficiary designation forms survived interpleader liability protection).

To be sure, no one has yet asserted a counterclaim against MetLife, and it is not certain that they will do so. But neither Sarto nor Ramirez has answered the complaint or opposed MetLife's motion for interpleader, so it is too soon to tell. For now, suffice it to say that it dismissal of MetLife would be premature.[6]

My decision rests on the limited function of interpleader and the desirability of disposing of related claims in a single proceeding. A blanket dismissal of the stakeholder risks being overbroad if it encompasses claims beyond the legitimate scope of interpleader. To put it another way, a stakeholder cannot use interpleader to rid itself of other, related claims that would not necessarily be paid out of the interpleaded funds. "[I]nterpleader protection does not extend to counterclaims that are not claims to the interpleaded funds." *Hovis*, 553 F.3d. at 264 (citing and quoting *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) (cautioning that 'interpleader was never intended . . . to be an all-purpose 'bill of peace'")). "The modern approach [to interpleader] . . . is that, where a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in litigation to defend against the counterclaim, rather than being dismissed after

---

[6] I do not, by the way, view the mere possibility of a counterclaim as an equitable circumstance that would weigh against permitting an interpleader action. *See, e.g., United States Fire Ins. Co. v. Abestospray, Inc.*, 182 F. 3d 201, 208 (3d Cir. 1999) ("Because interpleader is an equitable proceeding, it is subject to dismissal based on equitable doctrines."); Wright & Miller, Fed. Prac. & Proc. Civ. § 1709 ("[F]ederal courts . . . occasionally have accepted the argument that interpleader should not be allowed when it might reward inequitable conduct or improper conduct. This has been true where the stakeholder was guilty of laches or has contributed to the development of the adverse claims or should be estopped from seeking interpleader relief for some other reason.") This is not a case, for example, where an admitted tortfeasor is seeking to limit its liability. To all appearances, MetLife acknowledges liability and initiated this action in good faith to sort out the competing claims. Indeed, even where a stakeholder's conduct is questionable, "courts are reluctant to refuse interpleader on [equitable] grounds since the inconvenience to the stakeholder and the courts that would result if multiple litigation, and possibly multiple liability, came to pass are at least as troublesome as rewarding the stakeholder's questionable conduct." Wright & Miller, § 1709. So the practical course is not to bar interpleader altogether, but to do what I do here: Grant interpleader relief but hold the stakeholder in to permit the joinder of any counterclaims.

depositing the disputed funds with the court." *Id.* So the equitable relief I grant here does not go beyond what is necessary to fulfill the legitimate purpose of interpleader: to protect MetLife from the risk of multiple liability with respect to the interpleaded funds, *i.e.*, the Benefits themselves.

Also persuasive is the lack of prejudice to MetLife at this early stage. After the deposit of the Benefits into court, Sarto and Ramirez will be required to make their claims, and the picture as to potential counterclaims will be clearer. If none appear, MetLife will have lost nothing. If any counterclaims are asserted, MetLife will have a full and fair opportunity to defend against them in a single, consolidated proceeding.

To sum up: MetLife may deposit the disputed Benefits with the Court. Sarto and Ramirez will be compelled to make claims to those deposited Benefits and will be restrained from initiating any other action against MetLife to recover the Benefits. As to the interpleaded funds, MetLife is discharged from any further liability. It will remain in this case, however, to defend itself against any independent counterclaims, should they be asserted.

That leaves a final issue: attorneys' fees and costs. "A court has discretion to aware an interpleader plaintiff attorneys fees and costs if the plaintiff is (1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge of liability." *Metropolitan Life Ins. Co. v. Kubichek*, 83 F. App'x 425, 431 (3d Cir. 2013). "Since the stakeholder 'is considered to be helping multiple parties to an efficient resolution of the dispute in a single court,' courts usually find that the stakeholder's attorneys' fees are justified." *U.S. Life. Ins. Co. In the City of New York v. Holtzman*, Civ. Action No. 14-00113 (FLW), 2014 WL 5149707, at *7 (D.N.J. Oct. 14, 2014) (quoting *Banner Life Ins. Co. v. Lukacin*, No. 13-6589, 2014 WL 4724902 (D.N.J. Sept. 22, 2014)). Because "the work required to bring an interpleader suit is minimal," "the fee should not seriously deplete the fund." *Id.*

MetLife is a disinterested stakeholder which has conceded liability and sought a discharge of liability as to the interpleaded funds. It did not officiously instigate this litigation, but gave the claimants ample opportunity to settle the matter informally.[7] Once MetLife has deposited the disputed Benefits with the Court, all four elements will be satisfied. As to reasonableness, MetLife is seeking $4,572.40 in fees and costs. That sum represents the fees of one partner, who billed $207/hour for about 6 hours, and one associate, who billed $201/hour for about 15 hours. All services billed were performed for the purpose of seeking interpleader relief. The fees are reasonable. MetLife will be awarded $4,570.40 in fees and costs.

## III. CONCLUSION

For the reasons set forth above, MetLife's motion for interpleader and other relief is for the most part GRANTED, but DENIED IN PART. MetLife shall deposit the disputed Benefits with the Court. Upon deposit, MetLife is released from any liability as to the interpleaded funds. Sarto and Ramirez are restrained from instituting any other action against MetLife seeking payment of the Benefits and are compelled to litigate or settle among each other their claims to the Benefits in this Court. Upon a proper showing, the Court will consider whether Sarto or Ramirez is entitled to assert independent

---

[7] Some courts have declined to award attorneys' fees and costs when the stakeholder bears some responsibility for the dispute. *E.g.*, *Prudential Ins. Co. of Am. v. Richmond*, Civ. Action No. 06-525 (PSG), 2007 WL 1959252, at *4-5 (D.N.J. July 2, 2007) (denying an award of attorneys' fees and costs where insurer requested interpleader relief "only after it created the commotion that it filed this suit in order to absolve itself of liability"). Here, however, this is no evidence that MetLife brought this case in bad faith or to absolve itself of liability. *See* Wright & Miller, § 1719 ("The test for awarding costs and fees is . . . should the interpleading party be required to assume the risk of multiplicity of actions and erroneous election. . . . The test is not satisfied if the stakeholder has contributed to the need for interpleader by acting in bad faith or by unduly delaying in seeking relief."). MetLife advised Sarto and Ramirez that, if they did not compose their differences, it would initiate an interpleader action that could entitle MetLife to costs and fees. MetLife is not seeking to reduce its liability, but only to recoup fees and costs associated with the interpleader itself. Under the circumstances, then, I find that equitable considerations do not weigh against an award of fees and costs.

counterclaims that are not claims to the interpleaded funds. From the Benefits, MetLife may deduct $4,572.40 in attorneys' fees and costs.

A separate order will issue.

Dated: September 8, 2017

_____
**KEVIN MCNULTY**
**United States District Judge**